IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FATENA DAHDAL, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | Case No. 04-0415-CV-W-GAF |
| ) | |
| WELLS FARGO FINANCIAL, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by the Defendant, Wells Fargo Financial Acceptance Missouri, Inc. ("Wells Fargo").[1] (Doc. #16). The Plaintiff, Fatena Dahdal ("Dahdal"), filed this action alleging that Wells Fargo violated 42 U.S.C. § 2000e(5) ("Title VII") by refusing to hire her on two occasions because she is Jordanian. (Doc. #1). Wells Fargo asserts that Summary Judgment is warranted with respect to the first alleged incidence of discriminatory refusal to hire because Dahdal failed to timely file an administrative charge with the EEOC related to this incident. (Doc. #17). Additionally, Wells Fargo argues that it is entitled to Summary Judgment with respect to the second alleged incidence of discriminatory refusal to hire because the evidence submitted by Dahdal fails to support a prima facie case of Title VII discrimination. (Doc. #17). Upon careful consideration of the facts and arguments submitted by the parties, Wells Fargo's Motion for Summary Judgment is GRANTED.

## DISCUSSION

---

[1] Wells Fargo was improperly named in the Complaint as "Wells Fargo Financial."

1

**I.     Facts**

Dahdal was born in Amman, Jordan and was raised "in the native custom of the Arabic culture until the age of seven." (Doc. #17, 19). When she was seven years old, Dahdal and her family immigrated to the United States and lived in Younkers, New York. Id. Dahdal moved to Kansas City, Missouri in 1987 when she was twenty-eight years old. Id. While living in Kansas City, Dahdal worked several clerical and restaurant jobs. Id.

*A.     First Application for Employment: July 2002*

In July 2002, Dahdal applied for Collector and Collections Manager positions in Wells Fargo's Kansas City collections department. Id. Upon applying, Dahdal informed Wells Fargo that she had a delinquent account with Norwest Financial which had been acquired by Wells Fargo. Id. Dahdal states that she told Wells Fargo that this account related to a personal loan and a Wells Fargo employee told her that the overdue debt "didn't matter" because it wasn't an auto account. Pl.'s Dep. 78:7-16. Wells Fargo confirmed the existence of the delinquent account. Id.

After submitting her application on or about July 24, 2002, Dahdal participated in an "open house" interview session on or about August 6, 2002. Id. At this open house interview, Dahdal completed a skills assessment test, an interviewer asked Dahdal about her prior employment and work experience and Dahdal asked the interviewer questions about Wells Fargo. Id. During the interview, the interviewer noted Dahdal's accent and asked her where she was from. Pl.'s Dep. 87:7-8. Dahdal testified that she "jokingly" told him that she was from "where the bombs and wars have been right now." Pl.'s Dep. 87:10-12. Not understanding Dahdal's response, the interviewer asked, "From where?" Pl.'s Dep. 12-16. Dahdal told him, "Where the fighting is right now." Id. Dahdal does not consider herself to speak with

2

either a New York or "Middle Eastern" accent. Pl.'s Dep. 87:17-20. Although Dahdal acknowledges that her New York accent has been noted by others before, she cannot recall anyone ever telling her that she has a "Middle Eastern" accent. Pl.'s Dep. 87:17-88:22.

Wells Fargo decided not to hire Dahdal due to her delinquent account. Aff. of Randall H. Russell at ¶ 5. Wells Fargo asserts that Dahdal's "refusal to repay her debt to Wells Fargo was inconsistent with the duties of both a Collector and a Collections Manager . . . [Dahdal's] conduct was contrary to the standards established by Wells Fargo and employing her within the collections department would have been a clear conflict of interest." (Doc. #17). Dahdal is unaware of any individual who had a delinquent account with Wells Fargo and was nevertheless hired as a Collector or a Collections Manager. Pl.'s Dep. 132:24-133:3. On August 8, 2002, Wells Fargo selected other qualified applicants to fill the position(s) Dahdal sought. Aff. of Randall H. Russell at ¶ 5. In late 2002, Dahdal settled her delinquent account with Wells Fargo by making three payments that totaled less than the balance due on the account. Pl.'s Dep. 129:20-23; 131:22-132:1.

### B. *Second Application for Employment: May 2003*

On May 5, 2003, Dahdal claims that she applied a second time for a position as a Collector and/or Collections Manager with Wells Fargo. Pl.'s Dep. 101:6-7. One of Dahdal's former co-workers, Rose Mendoza, who was presently employed at Wells Fargo allegedly told Dahdal that John McCullum, a manager at Wells Fargo, would interview her. Pl.'s Dep. 101:10-18. When Dahdal arrived, she filled out an application and the receptionist told Dahdal that someone would contact her. Id. Dahdal returned to her car and called Ms. Mendoza who allegedly went to Mr. McCullum and told him that Dahdal had turned in her application; Mr. McCullum allegedly told Ms. Mendoza that he had not been called by the

3

receptionist or otherwise notified of Dahdal's presence..[2]  Pl.'s Dep. 101:20-102:5.  Dahdal decided that she didn't want to wait in the parking lot for Ms. Mendoza to sort things out with Mr. McCullum, so she left.  Pl.'s Dep. 102:7-9.

The only person Dahdal spoke to when she applied for employment in May 2003 was a receptionist.  Pl.'s Dep. 102:13-16.  Dahdal does not claim that the receptionist asked about her national origin or commented on her accent.  Pl.'s Dep. 103:5-104:3.  Dahdal believes that she was not hired in May 2003 due to her national origin because she was not hired when she applied for employment with Wells Fargo in July 2002.  Pl.'s Dep. 107:21-108:1.

Wells Fargo asserts that it has no record of Dahdal's May 2003 application for employment.  Aff. of Randall H. Russell at ¶ 7.  However, even if Dahdal had applied for a position as Collector and/or Collections Manager, Wells Fargo asserts that it would not have considered her to be a qualified candidate due to her collection account history with Wells Fargo and the fact that Wells Fargo had compromised its account with her.  Aff. of Randall H. Russell at ¶ 8.

### C.     *EEOC Filing*

On August 12, 2003, Dahdal filed a charge of discrimination against Wells Fargo with the EEOC.  (Doc. #17, Ex. 3).  Dahdal claimed that Wells Fargo denied her employment because of her national origin, which she identified as "Middle Eastern."  Id.  On February 3, 2004, the EEOC dismissed Dahdal's charge.  (Doc. #17, Ex. 4).  On May 4, 2004, Dahdal filed this action asserting that Wells Fargo violated Title VII by refusing to hire her in July 2002 and May 2003 because she is "Middle Eastern."  (Doc. #1).

---

[2]The Court notes that the testimony of Rose Mendoza, John McCullum and the receptionist have not been proffered in support of Dahdal's position.

4

In this Motion for Summary Judgment, Wells Fargo argues that no genuine issue of material fact exists to preclude summary judgment. (Doc. #17). Wells Fargo further asserts that Dahdal's claim for discriminatory failure to hire with respect to her July 2002 application for employment is time barred as Dahdal failed to file a timely administrative charge with the EEOC. Id. Additionally, Wells Fargo contends that Dahdal has failed to set forth sufficient facts to support a prima facie case for discrimination with respect to either her July 2002 or May 2003 applications for employment. Id. Finally, Wells Fargo asserts that the existence of Dahdal's delinquent Wells Fargo account constitutes a legitimate non-discriminatory reason not to hire Dahdal in its collections department. Id.

It appears that Dahdal, who is proceeding pro se, has attempted to defeat Wells Fargo's Motion for Summary Judgment by arguing that a genuine issue of material fact exists for trial. (Doc. #19). Dahdal's opposition to this Motion consists entirely of a statement of facts; she presents no legal authority or argument in support of her position that Wells Fargo's proffered reason for refusing to hire her is pretext for discrimination. Id.

## II.     Standard

Wells Fargo filed this Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. According to this Rule, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering this Motion, the Court views all facts in the light most favorable to Dahdal and gives her the benefit of all reasonable inferences. See Prudential Ins. Co. v.

5

Hinkel, 121 F.3d 364, 366 (8th Cir. 1997). The Court will not weigh the credibility of the evidence, but rather will focus on whether a genuine issue of material fact exists for trial. Roberts v. Browning, 610 F.2d 528, 531 (8th Cir. 1979); United States v. Porter, 581 F.2d 698, 703 (8th Cir. 1978).

An issue of material fact is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). When the evidence supports conflicting conclusions, a *genuine* issue of material fact exists and summary judgment should be denied. Kells v. Sinclair Buick—GMC Truck, Inc., 210 F.3d 827 (8th Cir. 2000) (emphasis added). The "materiality" of a disputed fact is determined by the substantive law governing the claim. Anderson, 477 U.S. at 248. "Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material." Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998) *citing* Anderson, 477 U.S. at 248.

Wells Fargo bears the burden of proving the absence of disputed material facts. *See* Prudential Ins. Co., 121 F.3d at 366. The burden then shifts to Dahdal to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If Dahdal fails to establish a factual dispute on an essential element of her case, the Court will proceed to determine whether Wells Fargo is entitled to judgment as a matter of law. *See* E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001). Summary judgment in favor of a defending party is appropriate where the defendant shows:

> (1) facts negating any of the claimant's elements necessary for judgment; (2) that the claimant, after an adequate period of discovery, has not been able and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) facts necessary to support the movant's properly pleaded affirmative defense.

Webb v. Reisel, 858 S.W.2d 767, 768 (Mo. Ct. App. 1993).

The summary judgment rule is intended "to isolate and dispose of factually unsupported claims" and should be applied to accomplish this purpose. Prudential Ins. Co., 121 F.3d at 366. In the interest of promoting judicial economy, summary judgment should be granted to prevent the trial of cases lacking a genuine issue of material fact. Inland Oil and Transp. Co. v. U.S., 600 F.2d 725, 728 (8th Cir. 1979).

**III.    Analysis**

As a preliminary matter, the Court finds that Dahdal has failed to set forth specific facts showing that a genuine issue of material fact exists for trial. In deciding this Motion for Summary Judgment, the Court has focused on the facts set forth in Dahdal's deposition. Although Dahdal attempted to controvert certain facts, these facts are not material as they are not germane to the Court's analysis. As Dahdal has failed to prove that a factual dispute exists on an essential element of her Title VII claim, the Court proceeds to determine if Wells Fargo is entitled to judgment as a matter of law.

> **A.    *Dahdal's claim for discriminatory failure to hire premised on her July 2002 application for employment is not actionable because Dahdal failed to timely file an administrative charge with the EEOC.***

Dahdal asserts that Wells Fargo violated Title VII by failing to hire her on two separate occasions because she is Jordanian. As a prerequisite to maintaining a cause of action under Title VII, Dahdal must file a timely administrative charge with the EEOC as required by 42 U.S.C. § 2000e-5(e)(1). Pursuant to 42 U.S.C. § 2000e-5(e)(1), Dahdal must file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred."[3] The Supreme Court examined the text of 42 U.S.C. § 2000e-

---

[3] 42 U.S.C. § 2000e-5(e)(1) requires claimants to file charges with the EEOC within either 180 or 300 days of the alleged unlawful employment practice. Claimants residing in Missouri have 300 days to file because Missouri is considered a "deferral state." See Owens v. Ramsey Corp., 656 F.2d 340, 342 (8th Cir. 1981). According to the Eighth Circuit, Missouri is a "deferral state" because it has

5(e)(1) in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) and defined "unlawful employment practice" and "occurred" within the meaning of the statute.

In defining "unlawful employment practice," the Supreme Court distinguished between claims for "discrete discriminatory acts" and hostile work environment claims which involve repetitive conduct. Morgan, 536 U.S. at 110, 115. The Court found that discrete discriminatory acts included "termination, failure to promote, denial of transfer, or refusal to hire" and each discrete discriminatory act "constituted a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114.

The Supreme Court proceeded to find that "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" Morgan, 536 U.S. at 110. When the alleged discriminatory act is the failure to hire, Eighth Circuit district courts have found that the unlawful employment practice 'happens' when the prospective employer fills the position for which the applicant applied. *See* Cedak v. Hamiltonian Fed. Sav. & Loan, 414 F.Supp. 495, 498 (E.D. Mo. 1976) (holding that plaintiff did not timely file his discriminatory failure to promote claim because the cause of action accrued when the job opening was filled); Crutchfield v. Pulaski County Special Sch. Dist., 647 F.Supp. 884, 886 (W.D. Ark. 1986) (finding that a claim for discriminatory failure to hire on the basis of age accrued when teaching position was filled).

After analyzing the definitions of "unlawful employment practice" and "occurred," the Supreme Court in National Railroad concluded:

---

adopted a Fair Employment Practices Act, which declares unlawful, *inter alia*, race discrimination in employment and establishes a commission to receive and investigate complaints. *See* Owens, 656 F.2d at FN4 citing Mo. Ann. Stat. § 296.010 et seq.

8

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred.

Morgan, 536 U.S. at 113.

Here, Dahdal claims Wells Fargo violated Title VII by failing to hire her on two separate occasions. For purposes of 42 U.S.C. § 2000e-5(e)(1), prevailing Supreme Court precedent characterizes a failure to hire as a discrete discriminatory act that occurred on the day it happened. As each allegation of discriminatory failure to hire "starts a new clock for filing charges alleging the act," the Court will analyze Dahdal's applications for employment separately.

Pursuant to Cedak and Crutchfield, Dahdal's cause of action for discriminatory failure to hire arising out of her July 2002 application for employment happened on August 8, 2002 when Wells Fargo hired other qualified applicants to fill the position(s) of Collector and Collections Manager. Therefore, Dahdal was statutorily required to file her charge of discrimination with the EEOC by June 4, 2003. Dahdal filed her complaint with the EEOC on August 12, 2003, outside of the 300-day statutorily prescribed time limit. As such, Dahdal's claim for discriminatory failure to hire based on her July 2002 application for employment with Wells Fargo is not actionable as Dahdal failed to file a complaint with the EEOC within 300 days of Wells Fargo hiring other qualified applicants to fill the positions. Therefore, Wells Fargo's Motion for Summary Judgment on Dahdal's claim for discriminatory failure to hire premised on her July 2002 application for employment is GRANTED.

> **B.** ***Dahdal's claim for discriminatory failure to hire premised on her May 2003 application for employment fails because the evidence presented by Dahdal fails to support a prima facie case of Title VII discrimination.***

9

Dahdal applied for a position as a Collector and/or Collections Manager with Wells Fargo a second time on May 5, 2003. Dahdal's claim for discriminatory failure to hire arising out of her May 2003 application for employment does not revive her claim for discriminatory failure to hire arising out of her July 2002 application because pursuant to Morgan each incident constitutes a separate actionable unlawful employment practice. Based on the evidence presented by both parties in this Motion, Dahdal's claim for discriminatory failure to hire arising out of her second application for employment is not time-barred as she applied for employment on May 5, 2003 and filed her charge with the EEOC on August 12, 2003.

Dahdal believes that Wells Fargo's decision not to hire her in May 2003 was based on her national origin because she wasn't hired when she initially applied for employment with Wells Fargo. In Morgan, the Supreme Court also addressed how discrete discriminatory acts that occurred outside of the statutory time period relate to claims for discrete discriminatory acts which occurred within the statutory time period:

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Morgan, 536 U.S. at 113. Although Dahdal's Title VII claim arising out of her July 2002 application for employment is time-barred, the Morgan decision permits Dahdal to use the facts related to her July 2002 application for employment as "background evidence" in support of her claim for discriminatory failure to hire arising out of her May 2003 application for employment.

Unfortunately, the Supreme Court failed to provide any guidance on the admission of prior discriminatory acts as "background evidence" in support of timely filed claims. As a practical matter, this evidence will likely have the same effect on the fact finder as evidence admitted which directly supports the

10

plaintiff's claim. Susan Strebel Sperber and Craig R. Welling, The Continuing Violations Doctrine Post-Morgan, 32-FEB Colo. Law. 57, 58 (Feb. 2003). Morgan does not discuss how the use of "background evidence" is reconciled with the prohibition against the introduction of prior bad acts into evidence. Id. Furthermore, the Supreme Court failed to indicate whether the plaintiff must demonstrate an independent evidentiary basis to admit such evidence. Id.

Following the Supreme Court's decision in Morgan, the Ninth Circuit considered the admission of prior acts of discrimination as "background evidence" in support of timely filed claims in Lyons v. England, 307 F.3d 1092 (9th Cir. 2002). The plaintiffs in Lyons asserted that their employer had violated Title VII by denying them favorable work assignments and job promotions over a period of several consecutive years. Lyons, 307 F.3d at 1100. The Ninth Circuit affirmed the district court's finding that the plaintiffs' claims for the alleged discriminatory assignment of work were time-barred based on the Morgan decision. Lyons, 307 F.3d at 1108. The Ninth Circuit proceeded to analyze "whether and to what extent" the plaintiffs may use the evidence of the alleged discriminatory assignment of work as evidence in support of their timely filed claims for discriminatory job promotion. Lyons, 307 F.3d at 1108.

The Ninth Circuit began by considering the origins of the rule that discriminatory acts which occur outside the statutory time period may be used as evidence in support of timely filed claims. Lyons, 307 F.3d at 1109. The Supreme Court first articulated this rule in United Air Lines, Inc v. Evans, 431 U.S. 553 (1977). The Evans case held that a female flight attendant, who was forced to resign after marrying, could not establish a continuing violation claim reaching back to her forced resignation after the airline rehired her (within the statutory limitations period) without reinstating her previous seniority. Evans, 431 U.S. at 557-58. The Evans majority concluded that a discriminatory act for which the employer's liability is time-barred

11

"may constitute *relevant* background evidence in a proceeding in which the status of a current practice is at issue." Evans, 431 U.S. at 1109.[4]

The Ninth Circuit seized on the Supreme Court's use of the adjective "relevant" to modify "background evidence" in Evans. The Ninth Circuit observed that evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Accordingly, the Ninth Circuit concluded that in the context of a Title VII discrimination claim, "admissible background evidence must be relevant to determine the ultimate question: whether . . . the defendant intentionally discriminated against [the plaintiff] because of his [national origin]." Lyons, 307 F.3d at 1110 (internal citations omitted). The Ninth Circuit proceeded to apply the balancing test of Fed. R. Evid. 403 which provides for the exclusion of otherwise relevant evidence where the probative value of the evidence is substantially outweighed by its prejudicial effect. "At the initial stage of a case of disparate treatment, appropriate background evidence will be evidence, either direct or circumstantial, that, when combined with evidence of the employer's present conduct, gives rise to an inference of unlawful discrimination." Lyons, 307 F.3d at 1110-1111 (internal citations omitted).

Here, Dahdal's only evidence that Wells Fargo's decision not to hire her in May 2003 was related to her national origin is that she wasn't hired by Wells Fargo the first time she applied for employment in

---

[4]Prior to the Morgan decision, the continuing violations doctrine curtailed the need for the admission of "background evidence" as prior discriminatory acts were admitted as evidence of a continuing violation. Zachary D. Fasman, Barbara Berish Brown, Annual Update in Equal Employment Opportunity Law, 696 PLI/Lit 47, *106 (Oct. – Nov. 2003). However, now that the continuing violations doctrine has been eliminated in the context of discrete discriminatory acts, the admission of "background evidence" presents a unique evidentiary problem for the Court to resolve. Id.

12

July 2002. Dahdal has presented no evidence of present discriminatory conduct by Wells Fargo which occurred within the statutory limitations period. Therefore, the evidence related to Wells Fargo's decision not to hire Dahdal in August 2002 does not constitute mere background evidence of Well's Fargo's alleged discriminatory failure to hire Dahdal in May 2003; rather, it is the *only* evidence of the alleged discrimination.

Furthermore, evidence of Wells Fargo's decision not to hire Dahdal in August 2002 may not be "combined with evidence of the employer's present conduct to give rise to an inference of discrimination" because Dahdal has presented no evidence that Wells Fargo's present conduct violates Title VII. *See* Lyons, 307 F.3d at 1110-1111. When considering the admissibility of prior discriminatory acts in Evans, the Supreme Court concluded that "the critical question is whether any present violation exists." Evans, 431 U.S. at 558. Here, Dahdal has failed to present any evidence that Wells Fargo discriminated against her on the basis of national origin when it declined to hire her in May 2003. Because Dahdal has failed to prove a present violation of Title VII, this Court finds that evidence of Wells Fargo's allegedly discriminatory failure to hire Dahdal in August 2002 should not be admitted in support of Dahdal's claim arising out of her May 2003 application for employment.

The present case is not the situation the Supreme Court likely envisioned would warrant the admission of prior discriminatory acts as "background evidence" in support of a timely filed claim. Dahdal should not be permitted to resurrect an otherwise time-barred claim of discriminatory failure to hire by simply re-applying for employment. Permitting plaintiffs, like Dahdal, to circumvent the statutory limitations period by allowing the admission of "background evidence" where there is no evidence of present discriminatory conduct is unfair to defendant-employers, like Wells Fargo, who should not be subjected

13

to defending revived claims "that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared." *See* Burnett v. New York Cent. R. Co., 380 U.S. 424, 428 (1965).

Applying the evidentiary standards articulated in Lyons warrants the same finding. Assuming, *arguendo*, that Wells Fargo discriminated against Dahdal on the basis of her national origin when it decided not to hire her in August 2002, this evidence of past discriminatory conduct tends to make it more probable that Wells Fargo discriminated against Dahdal when she applied for employment a second time in May 2003. Therefore, the evidence of Wells Fargo's failure to hire Dahdal in August 2002 is relevant under Fed. R. Evid. 401.

However, when the balancing test of Fed. R. Evid. 403 is applied, the probative value of the evidence of Wells Fargo's alleged past discrimination is outweighed by its prejudicial effect because there is no evidence of present discriminatory conduct. Therefore, a finding in favor of Dahdal would be based solely on the evidence of acts which occurred outside of the statutory limitations period. 42 U.S.C. § 2000e-5(e)(1) functions to preclude plaintiffs from recovering for acts occurring outside of the statutory limitations period while concurrently protecting defendants from being forced to defend against stale Title VII claims. This prejudice would likely be mitigated by evidence of present discriminatory conduct as the defense is less likely to be crippled by lost evidence, faded memories and missing witnesses. Therefore, on balance, Fed. R. Evid 403 would preclude the admission of Wells Fargo's alleged past discriminatory conduct where Dahdal has no evidence of present discriminatory conduct.

Dahdal's claim for discriminatory failure to hire arising out of her May 2003 application for

14

employment relies solely on Wells Fargo's decision not to hire Dahdal in August 2002. The Court has concluded based on the Supreme Court's holdings in <u>Morgan</u> and <u>Evans</u> and the Ninth Circuit's opinion in <u>Lyons</u> that the evidence of Wells Fargo's alleged prior discrimination is inadmissible absent evidence of present discriminatory conduct by Wells Fargo. As such, Dahdal has failed to present evidence to support her claim that Wells Fargo discriminated against her on the basis of her national origin when it refused to hire her following her May 2003 application for employment. Therefore, Wells Fargo's Motion for Summary Judgment on Dahdal's claim for discriminatory failure to hire premised on her May 2003 application for employment is GRANTED.

## **CONCLUSION**

Dahdal's claim for discriminatory failure to hire premised on her July 2002 application for employment is time-barred as Dahdal failed to file a timely administrative charge with the EEOC regarding the alleged discrimination. Dahdal's claim for discriminatory failure to hire premised on her May 2003 application for employment fails because Dahdal presented no admissible evidence in support of her claim that she was discriminated against by Wells Fargo on the basis of her national origin. Based on the foregoing analysis, Wells Fargo's Motion for Summary Judgment is GRANTED in its entirety.

**IT IS SO ORDERED.**

                                                                    /s/ Gary A. Fenner
                                                                   GARY A. FENNER, JUDGE
                                                                   United States District Court

DATED:   August 17, 2005